586 A.2d 1275

Lorenzer J.D. FINCH, Jr., et al.,

v.

HOLLADAY–TYLER PRINTING, INC.

No. 31, Sept. Term, 1990.

Court of Appeals of Maryland.

March 8, 1991.

Paul Alan Levy (Alan Morrison, Washington, D.C., Ralph Edward Hall, Jr., Rockville), on brief, for petitioners.

Stephen D. Shawe (Patrick M. Pilachowski, Alisa H. Reff, Shawe & Rosenthal, Baltimore), on brief, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

CHASANOW, Judge.

Petitioner Lorenzer J.D. Finch, Jr., (Finch) was employed by Respondent Holladay–Tyler Printing, Inc. (Employer). In November 1986, Finch suffered a workplace injury for which he filed a claim under the Maryland Workmen's Compensation Act, Maryland Code (1957, 1985 Repl.Vol. & 1990 Cum.Supp.), Article 101. Finch had previously filed workers' compensation claims in 1977, 1981 and 1984. When Finch returned to work on March 30, 1987, after a four-month absence, his name was on a list of workers slated for layoff. Finch alleges that he was the most senior

worker in the "general worker" classification and the third most senior of all plant employees on the list. His contention is that Employer went just high enough on the seniority list to ensure that Finch would be included in the layoff and that Employer used the layoff procedure as a pretext for discharging him in retaliation for his having filed workers' compensation claims. Finch also claims that, instead of being recalled from layoff, he received a telephone call offering him a temporary position but warning him that Employer did not want him back and otherwise discouraging him from returning to work. Employer claims, to the contrary, that Finch was recalled and "disclaimed interest in returning." In any event, Finch never returned to work. He later learned that less senior workers had escaped the layoff and/or been recalled and that the company had advertised for applicants in his job classification. Although Finch was covered by a collective bargaining agreement (CBA) negotiated with Employer by his union, he did not initiate grievance procedures pursuant to that contract.

Instead, in September 1987, Finch and his wife filed an action in the Circuit Court for Montgomery County seeking compensatory and punitive damages for retaliatory discharge and loss of consortium.[1] It is Finch's contention that Employer

"seized on the existence of a layoff as a pretext for squeezing Finch out of his job, in retaliation for his having filed workers' compensation claims. Thus, the company, which admitted having 'some leeway' with re-

---

**1.** There were other claims as well, but they are not at issue in this appeal. Finch initially filed a complaint alleging wrongful discharge, breach of covenant of good faith and fair dealing and civil conspiracy to contravene Maryland public policy, as well as an amended complaint adding claims for intentional infliction of emotional distress, negligent infliction of emotional distress and loss of consortium. Finch voluntarily dismissed the counts for breach of covenant of good faith and fair dealing, civil conspiracy, and negligent infliction of emotional distress. The intentional infliction of emotional distress claim was dismissed on summary judgment, and that dismissal is not challenged on appeal.

spect to the number of workers who would actually be laid off, went just high enough on the seniority list to ensure that Finch would be included."

Employer moved for summary judgment based on its contention that Finch had not first exhausted his remedies under the CBA, which included a provision that the sole and exclusive method of resolving disputes was the grievance procedure outlined therein. The circuit court entered summary judgment against Finch based on his failure to exhaust remedies contained in the collective bargaining agreement. We granted certiorari on Finch's petition before the case was argued in the Court of Special Appeals.

■ Maryland Rule 2–501(e) provides, "The court shall enter judgment in favor of or against the moving party if ... there is no genuine dispute as to any material fact and ... the party in whose favor judgment is entered is entitled to judgment as a matter of law." It is undisputed that Finch was covered under a CBA which provided for final and binding arbitration of disputes arising under the agreement. It is likewise undisputed that Finch did not seek adjustment of this matter under the terms of that agreement. The issue confronting this Court is purely a question of law: whether a union employee who charges an employer with retaliatory discharge for filing workers' compensation claims must first exhaust grievance procedures under a CBA before pursuing a state tort action in court.

The cause of action for retaliatory or abusive discharge was first recognized in Maryland in *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), where, in response to a certified question, we declared, "Maryland does recognize a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy...." *Id.* at 47, 432 A.2d at 473. Adler claimed that he was discharged to prevent him from reporting improprieties and illegal activities in his division to company headquarters. *Id.* at 34, 432 A.2d at 466. We found, however, that these allegations did not provide "a sufficient factual

predicate for determining whether any declared mandate of public policy was violated." *Id.* at 46, 432 A.2d at 472.

We found a violation of a clear mandate of public policy in *Ewing v. Koppers Co.*, 312 Md. 45, 50, 537 A.2d 1173, 1175 (1988), which involved a union employee who allegedly had been terminated in retaliation for his having filed a workers' compensation claim. In that case, this Court recognized,

" 'society as a whole has an interest in ensuring that its laws and important public policies are not contravened.' [*Adler*, 291 Md. at 42, 432 A.2d at 470.] The tort action as we have recognized it is not intended to reach every wrongful discharge. It is applicable only where the discharge contravenes some clear mandate of public policy. Thus, the public policy component of the tort is significant, and recognition of the availability of this cause of action to all employees, at will and contractual, will foster the State's interest in deterring particularly reprehensible conduct." (Citation omitted.)

*Id.* at 49, 537 A.2d at 1175. We found that

"[d]ischarging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy. The Legislature has made a strong statement to that effect in making such conduct a criminal offense,[2] and our perception of the magnitude of the public interest in preserving the full benefits of the worker's compensation system to employees, and deterring employers from encroaching upon those rights, is equally strong."

---

**2.** Maryland Code (1957, 1985 Repl.Vol.), Article 101, § 39A provides as follows:

"(a) An employee entitled to benefits under this [Workmen's Compensation] article may not be discharged from employment solely because he files a claim for compensation under this article.

(b) Any person violating this section is guilty of a misdemeanor and, upon conviction, shall be fined not more than $500 or imprisoned not more than 12 months, or both, in the discretion of the court."

*Id.* at 50, 537 A.2d at 1175. In addition, *Ewing* extended the cause of action for abusive discharge to cover "employees who serve under contract as well as those who serve at will." *Id.* at 49, 537 A.2d at 1175.

These cases clearly demonstrate that, under Maryland law, an employer may not discharge an employee solely in retaliation for filing a workers' compensation claim. Employer argues that Finch was not discharged "solely" for filing a workers' compensation claim because he was properly laid off. It maintains that Finch must follow the grievance procedures outlined in the CBA as a precondition to maintaining his tort action. Employer also implies that, regardless of whether the layoff was structured for the sole purpose of retaliating against Finch, it is vindicated if it was properly executed under the CBA. It ignores the possibility that, in the circumstances at bar, the outcome of any grievance process may not govern the issues in his abusive discharge claim.

Exhaustion of contractual remedies is a formal prerequisite of a section 301(a) action under the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a) (1988), which governs suits for violation of collective bargaining agreements. *Childers v. Chesapeake & Potomac Telephone Co.*, 881 F.2d 1259, 1265 n. 3 (4th Cir.1989) (citing *Clayton v. International Union, Etc.*, 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538, 543–44 (1981)). The question arises: Do the strictures of federal preemption require that we impose an exhaustion requirement in the context of a state tort action for abusive discharge?

This Court discussed the impact of federal preemption in an action for retaliatory discharge for filing workers' compensation claims in 1988 in *Ewing,* where the employee claimed that he was discharged solely for filing a workers' compensation claim. The terms of employment were fixed by a CBA which provided that employees shall not be discharged "without just cause." 312 Md. at 47 n. 1, 537 A.2d at 1174 n. 1. Ewing first sought arbitration pursuant to the CBA. The employer contended that Ewing was

discharged with good cause, assigning several reasons including his poor attendance record and his physical inability to do the work. *Id.* The arbitrator found that Employer had just cause to terminate Ewing and denied the grievance. *Id.* at 48, 537 A.2d at 1174. Following that decision, Ewing filed an abusive discharge claim contending that his discharge was in retaliation for filing a workers' compensation claim. *Id.*

In *Ewing,* we discussed the "difficult issue of absolute preemption," *id.* at 56, 537 A.2d at 1178, and we intimated that, where the issue is whether a discharge was "for good cause" and what was meant by good cause under the terms of a CBA, there must be an initial determination through the grievance process. *Id.* at 55, 537 A.2d at 1178. We concluded,

"The reach of § 301 of the Labor Management Relations Act is broad enough so that if a state action of the type involved here is permitted at all it is permitted only to the extent that it is compatible with the issues finally litigated in the earlier labor arbitration proceeding...."

*Id.* at 57, 537 A.2d at 1179. Based on this reasoning, *Ewing* held that the finding by the arbitrator that Ewing's discharge was for "just cause" precluded a subsequent state court finding that the discharge was solely in retaliation for filing a workers' compensation claim. *Id.* at 56, 537 A.2d at 1178. In reaching this decision, we recognized that the federal circuits had reached "varying results" on the issue and noted that the United States Supreme Court had granted certiorari in *Lingle v. Norge Div. of Magic Chef, Inc.,* 823 F.2d 1031 (7th Cir.), *cert. granted,* 484 U.S. 895, 108 S.Ct. 226, 98 L.Ed.2d 185 (1987), to resolve this split in the circuits. *Ewing,* 312 Md. at 54, 537 A.2d at 1177. Because Ewing had arbitrated his claim before filing a court action, the issue of whether an employee must exhaust his contractual remedies under the CBA before bringing his state tort claim was not before the Court.

Subsequent to our decision in *Ewing,* the Supreme Court decided *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S.

399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). *Lingle* involved the discharge of an employee who was protected from discharge without just cause by a CBA that imposed grievance and arbitration procedures. Lingle had filed suit in state court while her arbitration claim was still pending, and the employer had sought a stay of the state tort action pending the completion of the arbitration procedures. A unanimous Supreme Court stated,

" '[T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged ... and (2) the employer's motive in discharging ... him was to deter him from exercising his rights under the [Illinois worker's compensation statute] or to interfere with his exercise of those rights.' Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." (Citations omitted.)

486 U.S. at 407, 108 S.Ct. at 1882, 100 L.Ed.2d at 419–20. The Court went on to say, "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409–10, 108 S.Ct. at 1883, 100 L.Ed.2d at 421. The *Lingle* Court held that "an application of state law is pre-empted by § 301 of the Labor

Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." *Id.* at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423.

 *Lingle* requires deference to an arbitration procedure whenever construction of the CBA is at issue. *Lingle,* however, does not require initial resort to arbitration when there is no need to construe the CBA or when the issue of whether or not the CBA was violated is irrelevant to the abusive discharge action. *Lingle,* 486 U.S. at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423; *cf. Childers v. Chesapeake & Potomac Telephone Co.,* 881 F.2d 1259 (4th Cir.1989) (court did not address whether resolution of state-law claim required interpretation of CBA but instead held that, as a matter of Maryland law, an employee who fails to exhaust contract remedies cannot bring wrongful discharge claim in state court).

In this tort action, Finch is not claiming that Employer had no right to discharge him. The nature of Finch's abusive discharge claim is that Employer may have had a right to discharge him under the CBA but that Employer abused that right because its motivation was solely to retaliate against him for filing workers' compensation claims. In *DeBleecker v. Montgomery County,* 292 Md. 498, 506, 438 A.2d 1348, 1352–53 (1982), a case involving discharge of an at will public employee for exercising constitutional rights, we said,

"The common law rule, applicable in Maryland, is that an employment contract of an indefinite duration, *i.e.,* at will, can be legally terminated at the pleasure of either party at any time. The rule is inapplicable, however, if the decision to terminate the public employment was made because of the employee's exercise of constitutionally protected first amendment rights. Thus, while it was within the power of the defendants to remove DeBleecker from his position, their decision to discharge him 'would not have been lawful if it was made because of [De-Bleecker's] exercise of constitutionally protected first amendment rights.'" (Citations omitted.)

The same reasoning applies to an at will "worker fired for exercising his statutorily conferred right to file a workmen's compensation claim." *Adler*, 291 Md. at 37, 432 A.2d at 468 (citing *Frampton v. Central Indiana Gas Company*, 260 Ind. 249, 297 N.E.2d 425 (1973)). In the case of a contract employee, a claim for abusive discharge begins with the assumption that it is irrelevant whether the right to discharge exists under the employment contract. The issue is whether the employer abused that right.

■ We have recognized in Maryland that "[a]s a general rule, parties are free to contract as they wish [but a] contractual provision that violates public policy is invalid ... to the extent of the conflict between the stated public policy and the contractual provision." *State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 643, 516 A.2d 586, 592 (1986) (citation omitted). In *Ewing*, we stated that "the parties to a collective bargaining agreement are not free to 'opt out' of legitimate state controls simply by agreeing to impermissible conditions and claiming federal protection through pre-emption." 312 Md. at 54, 537 A.2d at 1177. By the same token, an employer may not abuse its right to discharge employees by manipulating contract provisions to circumvent the clear mandate of Maryland public policy.

Finch claims that Employer manipulated the terms of the layoff so that it would reach his seniority level with the insidious intent of wrongfully discharging him in violation of Maryland public policy. While it is possible, indeed probable, that Employer comported with the terms of the CBA, it does not necessarily follow that the discharge was not abusive. The Supreme Court recognized this fact in *Lingle*, where the Court noted, "even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law." *Id.* at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423.

 In the instant case, there is no need to resort to arbitration because the issue addressed by arbitration, whether the layoff procedure was accomplished in conformity with the CBA, would not itself be determinative of the wrongful discharge claim. Even if all of the appropriate CBA layoff procedures were followed and there was no breach of the CBA, Finch could still recover if the layoff procedures, although permissible under the CBA, were utilized solely as a pretext to discharge Finch because he filed workers' compensation claims. It is not necessary that Finch first exhaust the CBA grievance procedures.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED, CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY RESPONDENT.