**Kathie BYRD and Lisha Quarles, Appellants,**

v.

**VOCA CORPORATION OF WASHINGTON, D.C., Appellee.**

**Michelle Monroe, Appellant,**

v.

**VOCA Corporation of Washington, D.C., Appellee.**

**Nos. 05–CV–778, 05–CV–803.**

District of Columbia Court of Appeals.

Argued June 22, 2006.

Decided Dec. 31, 2008.

Leslie D. Alderman III, with whom T. Cary Devorsetz and Sundeep Hora were on the brief, for appellants.

Steven Sarfatti, Washington, for appellees.

Jonathan L. Gould filed a brief amicus curiae for the Metropolitan Washington Employment Lawyers Association in support of appellants.

Before FISHER, Associate Judge, and WAGNER and SCHWELB,* Senior Judges.

WAGNER, Senior Judge:

Appellants, Kathie Byrd, Lisha Quarles, and Michelle Monroe, sued their former employer, appellee, VOCA Corporation of Washington, D.C., for wrongful termination of employment based on public policy grounds. The trial court granted appellee summary judgment, having concluded that appellants' remedy for wrongful discharge was preempted by § 301(a) of the National Labor Relations Act of 1947 (NLRA), 29 U.S.C. § 185(a) (2001). The trial court also dismissed appellants' cases on the separate ground of failure to exhaust administrative remedies. Appellants argue that the trial court erred in its rulings because: (1) their causes of action are independent of the applicable collective bargaining agreement, and therefore, not preempted by § 301(a) of the NLRA; and (2) exhaustion of administrative remedies is not required because their claims involve rights independent of the contractual rights protected by the collective bargaining agreement.[1] We affirm the trial court's dismissal of appellant Monroe's claim on preemption grounds. We remand the cases of appellants Byrd and Quarles for further proceedings consistent with this opinion.

## I.

### Factual and Procedural Background

Appellants were employed by VOCA in separate group homes for developmentally disabled individuals in the District. They were members of Service Employees International Union (the Union) which had a collective bargaining agreement (CBA) with VOCA governing the terms of their

---

* Judge Schwelb was an Associate Judge at the time the case was argued. His status changed to Senior Judge on June 24, 2006.

1. Appellants also contend that the trial court erred in holding that a cause of action for wrongful termination on public policy grounds is not available to employees covered by a collective-bargaining agreement. In a footnote of its order, the trial court mentioned that it appeared that most courts recognizing a public policy exception to the at-will employment doctrine, see Carl v. Children's Hosp., 702 A.2d 159 (D.C.1997) (en banc), have held that it applies to only at-will employees. However, the trial court did not resolve this issue, stating that there had not been an opportunity for full discovery "on issues unrelated to the applicability of the preemption doctrine."

employment. Under the terms of the CBA, Union members could be disciplined or terminated only for "just cause" and "commensurate with the offense." The CBA also established a procedure for arbitration of grievances and terminations contested by the Union on an employee's behalf.

Each of the appellants complained to their supervisors about deficiencies in the conditions of the respective group homes where they worked. In addition, appellants Byrd and Quarles complained to members of the Council of the District of Columbia and officials in the Mayor's office. Shortly thereafter, appellants were terminated from their employment. The Union initiated arbitration proceedings on appellants' behalf, but appellants elected not to pursue arbitration. Each of them filed a complaint in the trial court alleging wrongful termination of employment.[2]

The trial court granted VOCA's motion for summary judgment, holding that the appellants' claims were "inextricably bound up in the collective bargaining agreement between [their] union and [their] employer and that [the] local law wrongful termination claim is therefore preempted by § 301(a) of the National Labor Relations Act of 1947, 29 U.S.C. § 185(a) [NLRA]." The court explained that it was impossible to resolve the claim or adjudicate VOCA's defenses without interpreting the collective bargaining agreement and that such interpretation is precluded under the federal preemption doctrine. The court also dismissed the claims on the independent ground of failure to exhaust administrative remedies.

## II.

### A. Preemption Principles

▉ Section 301 of the NLRA "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 404, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (citing *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). "Thus, in cases involving collective bargaining agreements, state laws purporting 'to define the meaning or scope of a term in a contract suit [are] preempted by federal labor law.' " *Roberts v. Howard Univ.,* 740 A.2d 16, 18 (D.C.1999) (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). Similarly, state tort remedies may be preempted under § 301. *See Allis–Chalmers,* 471 U.S. at 218–19, 105 S.Ct. 1904 (holding that § 301 preempted application of a state tort remedy where the scope of the defendant's duty to plaintiff was determined from consideration of the collective bargaining agreement). The Supreme Court made clear in *Lingle* "that interpretation of collective-bargaining agreements remains firmly in the arbitral realm; [ ] judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." 486 U.S. at 411, 108 S.Ct. 1877. If the state law claim does not require construing the collective bargaining agreement, it is independent of

---

**2.** Byrd and Quarles joined in filing their original complaint, and Monroe filed a separate complaint. Although it does not appear that the cases were consolidated, it appears that the court treated them as related and disposed of them on the same grounds. *See* Super. Ct. Civ. R. 42(a) & (c) (providing, *inter alia,* for joint hearing or other orders on

related matters in issue, which include cases that "(i) involve common property; or (ii) involve common issues of fact; or, (iii) grow out of the same act or transaction; or (iv) involve common and unique issues of law which appear to be of first impression in this jurisdiction.")

it for purposes of § 301, and therefore will not be preempted. *See id.* at 407, 108 S.Ct. 1877. On the other hand, if resolution of the state law claim requires interpretation of the collective bargaining agreement, it will be preempted under § 301. *Id.* at 405–06, 108 S.Ct. 1877.

A determination of whether a state law claim is preempted under § 301 of the NLRA requires reference to the terms of the CBA and an analysis of the state law claim. *See Lingle, supra,* 486 U.S. at 407, 108 S.Ct. 1877 (examining in the § 301 preemption analysis the elements of a state remedy in order to determine whether the claim could be resolved without interpreting the CBA); *see also Allis–Chalmers, supra,* 471 U.S. at 213–16, 105 S.Ct. 1904 (examining the CBA and analyzing the state tort remedy in order to determine whether § 301 preempted application of the tort remedy). At issue in *Lingle* was "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state-law remedy for retaliatory discharge."[3] 486 U.S. at 401, 108 S.Ct. 1877. In determining whether the state-law remedy required interpretation of the collective-bargaining agreement, the Supreme Court first analyzed the elements of the state based cause of action. *Id.* at 407, 108 S.Ct. 1877. Retaliatory discharge under Illinois law required proof (1) that the plaintiff was discharged or threatened with discharge and (2) that the employer's motive for the action was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights. *Id.* at 407, 108 S.Ct. 1877 (citing *Horton v.*

*Miller Chemical Co.,* 776 F.2d 1351, 1356 (7th Cir.1985)) (summarizing Illinois state-court decisions). Having reviewed these elements, the Supreme Court concluded that purely factual questions concerning the employee's conduct and the employer's motivation for the firing were involved, which did not require interpretation of any terms of the collective bargaining agreement. Therefore, the Court held that the state law remedy was independent for § 301 preemption purposes.

### B. *Preemption Analysis*

Appellants argue that their state law claims are not preempted by § 301 because their wrongful termination causes of action are independent of the collective bargaining agreement. Appellee responds that the pre-emptive effect of § 301 of the NLRA precludes the action. However, preliminarily, appellee argues that appellants have no viable state law claim against which the primacy of national labor laws can be analyzed. Appellee contends that the cause of action that appellants seek to assert, wrongful discharge in violation of public policy, is based upon a narrow exception to the at-will employment doctrine which is not applicable to employees, like appellants, whose job tenure is protected by contract.

### (i) *Public Policy Claim*

Appellants ask this court to extend to employees covered by contract a cause of action for wrongful discharge based on the narrow exception to the at-will employment doctrine recognized in *Adams v. Cochran & Co.,* 597 A.2d 28 (D.C.1991).[4]

---

3. Illinois, where Lingle was employed, recognized the tort of retaliatory discharge for filing worker's compensation claims and the availability of the tort action to employees covered by union contracts. *Lingle, supra,* 486 U.S. at 406–07, 108 S.Ct. 1877 (citations omitted).

4. Under the at-will employment doctrine, "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams, supra,* 597 A.2d at 30 (citations omitted).

In *Adams*, this court held "that there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his former employer for wrongful discharge when the *sole* reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Id.* at 34 (emphasis added). Subsequently, the en banc court held that *Adams* did not foreclose a panel or the en banc court from recognizing other public policy exceptions to the at-will employment doctrine. *Carl, supra* note 1, 702 A.2d at 160.[5] A majority stated that "the recognition of any public policy exception to the at-will doctrine must be solidly based on a statute or regulation that reflects the particular public policy to be applied, or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct." *Id.* at 163.[6] Applying the principles extracted from *Carl*, this court reversed the grant of summary judgment in favor of an employer where the at-will employee claimed that her firing was in retaliation for protesting health, food, and safety violations. *Washington v. Guest Servs., Inc.*, 718 A.2d 1071 (D.C.1998).[7] Subsequently, this court reversed an order dismissing a wrongful termination claim for failure to state a cause of action where the former at-will employee alleged that his employer fired him for refusing to violate certain District of Columbia statutes. *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 802, 807 (D.C.1999). This court concluded that Fingerhut had made the requisite allegations under *Carl* to avoid dismissal under Super. Ct. Civ. R. 12(b)(6) and to entitle him to prove, if he could, a violation of public policy officially declared in several local statutes.[8] *Id.* at 807.

As appellee points out, this jurisdiction has never recognized the availability of a cause of action for wrongful discharge in violation of public policy for non-at-will employees. It contends that this court should not expand the doctrine to include employees whose rights are protected by contract and enforceable in grievance and arbitration proceedings. Further, appellee argues that this court has refrained from pronouncing alterations to common law rules until a clear national consensus has developed, which has not occurred here. Appellants argue that a cause of action for wrongful termination in violation of public

5. A panel majority, deeming itself bound by the decision in *Adams*, had rejected Ms. Carl's request to expand the *Adams* exception to "include the rights of employees to speak out publicly on issues affecting public interest without fear of retaliation by their employers." *Carl, supra*, 702 A.2d at 159.

6. In *Carl*, the employee alleged that she was fired in retaliation for her testimony before the District of Columbia Council, which would violate the public policy embodied in D.C.Code § 1–224 (1992). *Carl, supra* note 1, 702 A.2d at 160 & n. 2. This court held that the trial court erred in dismissing Ms. Carl's complaint for failure to state a cause of action. *Id.* at 161.

7. The employee "alleged, under oath, that she was discharged for attempting to persuade her fellow worker (and, ultimately, her employer) not to violate [certain] officially declared public policy and for protesting an alleged unsafe and unlawful practice." *Washington, supra*, 718 A.2d at 1080. The court found a clear public policy expressed in several municipal regulations, the purpose of which would be frustrated if the employee were permitted to be fired for her actions. *Id.*

8. The court stated that the statutes upon which Fingerhut relied (D.C.Code §§ 1–142, 22–704 and 4–175 in concert with 4–114 and its implementing regulations), reflected a clear mandate of public policy "against the termination of a special police officer who records and reports a bribe of a government official, and who assists the FBI in the investigation of corrupt influence with respect to a federal construction grant." *Fingerhut, supra*, 738 A.2d at 806–07.

policy should not be limited to at-will employees. They contend that such a limitation would frustrate the purpose of the "public policy tort."

Some courts have held that a claim for wrongful discharge in violation of public policy is available to non-at-will employees, while others have held the contrary.[9] Generally, courts that limit wrongful discharge actions in violation of public policy to at-will employees reason that the employee has a contract remedy, making unnecessary the expansion of the tort to employees who have the protections afforded by a collective bargaining agreement. *See, e.g., Lamb, supra* note 9, 700 F.2d at 1095 (following Illinois law in a diversity case).[10] Courts holding that such an action is available to any employee reason that the cause of action is distinct from the contract, "arises out of the employer's duty to conduct its affairs in compliance with public policy," and "embodies a strong state interest in protecting against violations of public policy." *Smith, supra* note 9, 991 P.2d at 1141 (citations omitted) (holding that when "*any* employee is terminated in violation of a clear mandate of public policy, the employee should be permitted to recover for the violation of his or her legal rights)."

■ Maryland has recognized a cause of action for abusive discharge in favor of at-will employees as well as those who work under a contract. *See Ewing, supra* note 9, 537 A.2d at 1175. In *Ewing,* Maryland's highest court had to decide whether a "cause of action exists under Maryland law for abusive discharge of an employee whose rights are protected by contract," and whether "the pre-emptive effect of § 301 of the Labor Management Relations Act foreclosed the bringing of the action, or in the alternative, its successful prosecution." *Id.* at 1174. Just as in this jurisdiction, the Maryland Court of Appeals had recognized previously only the applicability of the tort to "an at will employee when the motivation for the discharge contravenes some clear mandate of public policy." *Id.* (quoting *Adler v. Am. Standard Corp.,* 291 Md. 31, 47, 432 A.2d 464, 473 (1981)). With respect to the viability of such a claim for contract workers, the Maryland court held that "[a] cause of action for abusive discharge is available to

---

**9.** Cases holding that wrongful discharge in violation of public policy is available only to at-will employees include, *e.g., Stiles v. Am. Gen. Life Ins. Co.,* 335 S.C. 222, 516 S.E.2d 449 (1999); *Hermreck v. United Parcel Serv.,* 938 P.2d 863 (Wyo.1997); *Luethans v. Washington Univ.,* 894 S.W.2d 169 (Mo.1995); *Cullen v. E.H. Friedrich Co.,* 910 F.Supp. 815, 821 (D.Mass.1995) (citing *Azzi v. Western Elec. Co.,* 19 Mass.App.Ct. 406, 474 N.E.2d 1166 (1985)); *Tomlinson v. Board of Educ.,* 226 Conn. 704, 629 A.2d 333 (1993); *Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp.,* 106 N.M. 19, 738 P.2d 513 (1987); *Phillips v. Babcock & Wilcox,* 349 Pa.Super. 351, 503 A.2d 36 (1986); *Lamb v. Briggs Mfg.,* 700 F.2d 1092 (7th Cir.1983) (quoting *Cook v. Caterpillar Tractor Co.,* 85 Ill.App.3d 402, 40 Ill.Dec. 864, 407 N.E.2d 95 (1980)).

Some cases in which courts have held that wrongful discharge in violation of public policy is available to employees covered by a collective bargaining agreement include: *Smith v. Bates Technical Coll.,* 139 Wash.2d 793, 991 P.2d 1135 (2000); *Davies v. Am. Airlines, Inc.,* 971 F.2d 463 (10th Cir.1992); *Retherford v. AT & T Commc'ns of the Mountain States, Inc.,* 844 P.2d 949 (Utah 1992); *LePore v. Nat'l Tool & Mfg. Co.,* 115 N.J. 226, 557 A.2d 1371 (1989); *Ewing v. Koppers Co., Inc.,* 312 Md. 45, 537 A.2d 1173 (1988); *Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, 752 P.2d 645 (1988); *Midgett v. Sackett–Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984).

**10.** The 7th Circuit observed that if it were not constrained by Illinois law, it might have found persuasive the argument that disparities between successful tort and contractual remedies warranted the unqualified right to an action for retaliatory discharge. *Lamb, supra* note 9, 700 F.2d at 1096.

contractual employees as well as to at will employees."[11]  *Id.* at 1179.  The court reasoned that recognition of the tort action for all employees "will foster the State's interest in deterring particularly reprehensible conduct."  *Id.* at 1175.  The court cautioned that the action "is applicable only where the discharge contravenes some clear mandate of public policy."  *Id.* The Maryland court's reasoning is persuasive.  Denying contract workers the public policy wrongful discharge remedy tends to "ignore[ ] the fundamental distinction between tort and contract actions."  *Smith, supra* note 9, 991 P.2d at 1141.  The duty giving rise to the tort remedy is not derived from the covenants of contract, but rather from the employer's obligation to conduct its affairs in conformity with fundamental public policy.  *See id.* (citing *Koehrer v. Superior Court,* 181 Cal.App.3d 1155, 1165, 226 Cal.Rptr. 820, 825 (1986)) (quoting William L. Prosser, The Law of Torts 613 (4th ed.1971)).  Recognition of the cause of action will, as the Maryland court observed, "foster the State's interest in deterring particularly reprehensible conduct."  *Ewing,* 537 A.2d at 1175.  We have held that a cause of action for wrongful discharge is available to at-will employees under the *Adams–Carl* line of cases, consistent with its strict requirements. Specifically, a plaintiff must show that the employer-defendant acted in contravention of an "identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution...."  *Fingerhut, supra,* 738 A.2d at 806 (quoting *Carl, supra* note 1, 702 A.2d at 164).

"[T]here must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination."  *Id.* at 803 n. 7 (quoting the majority in *Carl, supra* note 1, 702 A.2d at 164).

Appellee argues that even if the *Adams–Carl* type tort remedy extends to CBA employees, appellants cannot make out their claims.  It contends that appellants can show neither the clear mandate of public policy nor a close fit between any such policy and the conduct involved in the alleged wrongful termination.  Further, appellee argues that appellants cannot satisfy the sole-cause requirement of *Adams–Carl* nor point to proof of whistle-blowing activity.  The trial court dismissed the action based on federal preemption grounds, and it specifically declined to reach the grounds on which appellee urges us to affirm because appellant "has not had an opportunity to take discovery on issues unrelated to the applicability of the preemption doctrine."  Under these circumstances, we need not, and do not resolve these questions.  Therefore, we turn to consideration of whether the federal preemption principles preclude recovery.[12]

### (ii) *Section 301 Analysis*

Appellants argue that their claims for wrongful termination in violation of public policy are completely independent of the CBA. They contend that in their cases, as in *Lingle, supra,* the trial court was required to examine only the conduct of the employee and the motivation of the em-

---

11.  After resolving the question of the availability of the tort remedy to contract workers, the Maryland court considered the impact of § 301 on the litigant's claim.  The court decided that assuming that § 301 of the Labor Management Relations Act did not preclude the union employee from bringing the action after exhaustion of his contract remedies, he could not prevail "because an essential ele-

ment of the cause of action was determined adversely to the employee by final arbitration, and the pre-emptive effects of § 301 require that this State accord that finding preclusive effect."  *Ewing, supra* note 9, 537 A.2d at 1179.

12.  See Part II. A., *Preemption Principles, supra.*

ployer, purely factual issues, neither of which required it to interpret the CBA. *See Lingle,* 486 U.S. at 405–07, 108 S.Ct. 1877 (holding that state law claims are preempted under § 301 if their resolution requires interpretation of the collective bargaining agreement). However, *Lingle* instructs that consideration be given to the CBA and the tort remedy involved. Here, the tort remedy involved is different from the one under consideration in *Lingle.* As appellants concede, their claims require proof that the employer's sole reason for discharging them was one that violates a clear mandate of public policy. *See Fingerhut, supra,* 738 A.2d at 806–07 (citing *Carl, supra* note 1, 702 A.2d at 164). Following the methodology set forth in *Lingle,* we examine these elements to determine whether adjudication of their claims would require interpretation of the CBA.

■ Appellant Monroe alleged in her complaint that VOCA terminated her employment purportedly for her failure to ensure that sufficient staff was on duty when she abandoned her duty station, while the real reason was her report of health and safety problems at the group home where she worked.[13] Ms. Monroe claims in another pleading that she was authorized to leave the group home under the CBA in that her Union representative authorized it. Appellee argues that appellant Monroe's claimed justification for her workplace misconduct will require reference to the CBA. Appellee contends that deciding the tort claim depends on the meaning and application of the CBA provisions involving progressive discipline and disparate treatment of similarly situated bargaining unit members and granting the employer the right to manage its workplace and workforce in conducting its business. We agree that interpretation of the CBA will be required for resolution of Monroe's tort claim in these circumstances. Article V of the CBA provides in relevant part that:

> Except as otherwise specifically provided in this contract, the Company has the exclusive right and discretion in ... direction of the workforce, including the right to ... transfer, demote, discipline, discharge for cause; establish reasonable rules and penalties; ... and to ... control the operation and business of the Employer.

Whether the Union representative had authority to excuse appellant Monroe from her duty station in connection with a disciplinary meeting will depend, to some extent, upon interpretation of Article V of the CBA which appears to give that authority to the employer. The CBA also provides in Article XVIII that "[d]isciplinary action shall not be imposed upon an employee except for just cause and shall be commensurate with the offense." If Monroe's Union representative had authority under the CBA to direct her actions in preparation for the disciplinary hearing, that would have a bearing upon whether the employer fired her for just cause. In Monroe's case, as the trial court found, such questions require interpretation of the collective bargaining agreement. *See Reece v. Houston Lighting &*

---

**13.** Appellant Monroe alleged that she left an anonymous voice mail message for the employee to whom complaints were to be directed regarding such items as the lack of deodorant for residents and trash bags, disposal of diapers in trash containers without liners, expired registration tags and the need for mechanical repairs on a transport vehicle, the use of shampoo instead of soap to wash resi-

dents and the lack of other supplies. Appellant alleged that her supervisor heard the taped complaint and announced that she would fire the person who made the complaint. Monroe also alleged that she had identified certain conditions and instances of neglect to officials who inspected the group home.

*Power Co.*, 79 F.3d 485, 487 (5th Cir.1996) (claim of violation of state discrimination statute preempted because resolution of the claim "turns on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA"; claim of intentional infliction of emotional distress preempted because to "evaluate whether [employer's] conduct was 'outrageous,' the conduct must be measured against the CBA"). Therefore, the court properly held that Monroe's claim is preempted by § 301 of the NLRA.

Neither the trial court's order nor appellee's brief explains why the claims of Byrd and Quarles cannot be resolved without interpreting the CBA. Byrd alleged in her complaint for wrongful termination that she made complaints to her managers and members of the District of Columbia Council at one or more hearings about insufficient food and medical care in the group home where she worked. She alleged further that after complaining that she received abusive treatment at the hands of a co-worker, she was instructed to find a position in another group home, but the same requirement was not imposed on the offending co-worker. Byrd alleged that she was fired by VOCA for reporting about the neglect and threats to the safety and welfare of the residents of the group home in violation of the District's public policy. In a second count, Byrd alleged that she was subjected to a hostile work environment where the co-worker about whom she complained subjected her to verbal and physical abuse. Quarles, who worked at a different group home, alleged that she made similar complaints (*e.g.,* insufficient funding, staffing and supplies and staff member's use of alcohol during work hours). Quarles alleged that she made her complaints at a public hearing and that she was terminated thereafter on the pretext that she fabricated her time records. It is not clear from the face of the complaint that resolution of the claims made by Byrd and Quarles will require interpretation of the CBA or that any more than purely factual questions will be involved. Therefore, we must remand their cases for further consideration and explication of whether interpretation of the CBA is required for resolution of their claims.

## III.

### *Exhaustion of Administrative Remedies*

The trial court ruled that appellants' claims must be dismissed for the separate and independent reason of failure to exhaust the grievance and arbitration remedies under the CBA. Appellants argue that the grievance policy in their CBA does not apply to disputes for wrongful and retaliatory termination in violation of public policy. They contend that the plain language of the CBA imposes the grievance/arbitration process only on those disputes that arise *out* of the agreement and that their independent public policy tort claims do not. Similarly, amicus argues that arbitration clauses in CBAs generally do not preclude an employee from pursuing an action for wrongful termination. Amicus contends that, absent an individual arbitration agreement as opposed to a CBA, an employee cannot be held to have bargained away his rights to sue.

### A. *Applicable Legal Principles*

This court has stated that "arbitration provisions in a collective bargaining agreement should be specifically enforced," and that "courts have emphasized the duty to enforce arbitration clauses as one of the basic tenets of federal labor law." *Roberts, supra,* 740 A.2d at 20 (citations omitted). However, it is generally agreed that federal labor law does not mandate resort to arbitration if the claim at issue does not require interpretation of the CBA.

Appellants rely upon a case where the Maryland Court of Appeals specifically ad-

dressed the question: "Do the strictures of federal preemption require that we impose an exhaustion requirement in the context of a state tort action for abusive discharge?" *See Finch v. Holladay–Tyler Printing, Inc.,* 322 Md. 197, 586 A.2d 1275, 1278 (1991). In *Finch,* the court interpreted *Lingle, supra,* to mean that an employee need not resort to arbitration "when there is no need to construe the CBA or when the issue of whether or not the CBA was violated is irrelevant to the abusive discharge action." *Id.* at 1279. More recently, the Maryland Court of Appeals clarified the *Finch* holding, stating it "interpret[s] *Finch* as standing for the proposition that the exhaustion of remedies under a collective bargaining agreement is not required when the issues raised by the plaintiff's wrongful discharge claim are not dependent upon an interpretation of the collective bargaining agreement." *Gazunis v. Foster,* 400 Md. 541, 929 A.2d 531, 544 (Md.2007).

Similarly, virtually all federal circuits have held that an employee covered by a CBA has a right to sue to vindicate certain statutory rights or rights independent of the CBA without having to resort first to the collectively bargained grievance-arbitration procedures. *See, e.g., Albertson's, Inc. v. United Food & Commercial Workers Union,* 157 F.3d 758, 759, 761–62 (9th Cir.1998) (holding that employees covered by a CBA have the right to sue in federal court under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, without resort to the grievance-arbitration procedure under the CBA); *Penny v. United Parcel Serv.,* 128 F.3d 408, 414 (6th Cir.1997) (holding that an employee retains the right to judicial remedy under the Americans with Disabilities Act (ADA)); *Pryner v.*

*Tractor Supply Co.,* 109 F.3d 354, 363–65 (7th Cir.1997) (upholding order denying stay of employees' suits under Title VII and ADA for arbitration pursuant to CBA and holding that "the union cannot consent *for* the employee by signing a collective bargaining agreement that consigns the enforcement of statutory rights to the union-controlled grievance and arbitration machinery created by the agreement."); *Brisentine v. Stone & Webster Eng'g Corp.,* 117 F.3d 519, 526–27 (11th Cir.1997) (holding that a claim for violating the ADA is not subject to mandatory arbitration pursuant to a CBA where the arbitrator lacked authority to resolve statutory claims); *Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437, 1453–54 & n. 2 (10th Cir. 1997) (holding that an employee suing for hostile work environment under Title VII is not required to exhaust grievance procedure provided for in the CBA, particularly absent any indication that the union agreed to arbitrate statutory claims), *vacated on other grounds,* 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998); *Varner v. Nat'l Super Markets, Inc.,* 94 F.3d 1209, 1213 (8th Cir.1996) (holding that exhaustion of grievance and arbitration remedies under the CBA is not required before filing suit under Title VII and the Missouri Human Rights Act); *Tran v. Tran,* 54 F.3d 115, 117–18 (2nd Cir.1995) (holding that a former employee is not required to exhaust his arbitration remedies under a CBA prior to filing claims under the Fair Labor Standards Act (FLSA)); and *Zipf v. Am. Tel. & Tel. Co.,* 799 F.2d 889, 893 (3d Cir.1986) (holding that participant in a federally regulated employee benefits plan is not required to exhaust internal administrative remedies before filing suit in federal court for alleged violation of statutory rights).[14]

---

**14.** *But see Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875, 877, 879 (4th Cir.1996) (rejecting argument that district court erred in holding arbitration pursuant to a CBA required before filing suit for violations of Title VII and the ADA).

Addressing analogous issues, state courts have also held that exhaustion of contract arbitration remedies in a collective bargaining agreement is not required before an aggrieved party seeks redress in court for alleged violations of independent rights created by statute or based on violation of public policy. *See Smith, supra* note 9, 991 P.2d at 1143 (holding that exhaustion of contract remedies under a CBA is not required for a wrongful discharge claim based on a violation of public policy because it arises outside of the CBA); *Finch, supra,* 322 Md. at 197, 586 A.2d at 1280 (holding that exhaustion of a CBA's administrative remedies is not required where there is no need to construe the CBA or the question of whether or not the CBA was violated is irrelevant to the abusive discharge action); *Conaway v. Webster City Products Co.,* 431 N.W.2d 795, 800 (Iowa 1988) (holding that retaliatory tort actions, independent of the CBA, do not require exhaustion of the grievance and arbitration procedures provided in it); *Brevik v. Kite Painting, Inc.,* 416 N.W.2d 714, 719 (Minn.1987) (holding retaliatory discharge claim arising under state health and safety statute did not require exhaustion of administrative remedies provided in CBA); *Midgett v. Sackett–Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984) (upholding right of employees covered under a CBA to maintain action in tort for wrongful termination without first exhausting contract remedies); *Barry v. Flint Fire Dep't,* 44 Mich.App. 602, 205 N.W.2d 627, 630 (1973) (holding that an employee covered by a CBA need not exhaust contract grievance procedure for a claim based on an alleged violation of constitutional rights as opposed to rights created by contract).

These cases do not end our inquiry, however, because federal labor law is not the only body of law that favors arbitration. "It is by now clear that statutory claims, [even those based on important social policies], may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act.]" *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* the Supreme Court held that an employee's claim under the Age Discrimination in Employment Act of 1967 (ADEA), was subject to compulsory arbitration pursuant to an arbitration agreement in a securities registration form. *Id.* at 23, 35, 111 S.Ct. 1647. And in *Benefits Commc'n Corp. v. Klieforth,* 642 A.2d 1299 (D.C.1994), we held "that agreements to arbitrate employment discrimination claims are enforceable." *Id.* at 1304 (referring to a claim under the District of Columbia Human Rights Act). "Time and again this court has observed that there is a well-established preference to arbitrate disputes when the parties have so agreed." *Id.* at 1303.

We see no reason in principle why the common law claim at issue here could not be subject to arbitration, just as a statutory claim may be. The issue is whether the employees have in fact agreed to arbitrate that claim. *Gilmer* and *Klieforth* are distinguishable from our case because they involved agreements to arbitrate signed by the individual employee and enforceable under the Federal Arbitration Act or its District of Columbia counterpart.[15] There is no similar agreement to arbitrate signed by the individual employees in this case, and courts currently are divided on whether a broadly-worded arbitration clause in a CBA waives an employee's right to a judicial forum for a claim that does not arise

**15.** The District of Columbia Uniform Arbitration Act, D.C.Code §§ 16–4301 to –4319 (2001), "applies to arbitration agreements be-

tween employers and employees or between their respective representatives." D.C.Code § 16–4301 (2001).

out of the CBA. *Compare Pryner, supra,* 109 F.3d at 363–65 ("the union cannot consent *for* the employee by signing a collective bargaining agreement that consigns the enforcement of statutory rights to the union-controlled grievance and arbitration machinery created by the agreement") *with Aleman v. Chugach Support Servs., Inc.,* 485 F.3d 206, 215 (4th Cir.2007) (union-negotiated collective bargaining agreements that require the arbitration of statutory discrimination claims are valid and binding on unionized employees). The Supreme Court recently heard argument in a case which may resolve the issue. *14 Penn Plaza LLC v. Pyett,* No. 07–581 (argued Dec. 1, 2008).[16] We need not await that ruling, however. We will assume, without deciding, that an arbitration clause in a collective bargaining agreement that waived the right to a judicial forum for an independent claim would be enforceable.

In a case cited by amicus in support of its position, the Supreme Court held that a general arbitration clause in a CBA did not require the employee to use the arbitration procedure before seeking redress in court for an alleged violation of the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12101 *et seq. Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70, 72, 82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). The Supreme Court held that absent a "clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination," which was not present, the employee could assert his claims in court without resorting to arbitration.[17] *Id.* at 82, 119 S.Ct. 391. The Supreme Court stated that the presumption of arbitrability accorded the CBA "does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts to *interpret the terms of a CBA.*"[18] *Id.* at 78, 119 S.Ct. 391 (citation omitted) (emphasis in the original).[19] Although the Court rec-

**16.** The issue before the Supreme Court in *Pyett* is whether "an arbitration clause contained in a collective bargaining agreement, freely negotiated by a union and an employer, which clearly and unmistakably waives the union members' right to a judicial forum for their statutory discrimination claims, [is] enforceable?" In *Pyett,* the arbitration provision in the CBA very clearly covered claims under Title VII of the Civil Rights Act, the Americans with Disabilities Act, and similar laws outlawing discrimination in employment. *Pyett v. Pennsylvania Bldg. Co.,* 498 F.3d 88, 90 (2nd Cir.2007), *cert. granted,* —— U.S. ——, 128 S.Ct. 1223, 170 L.Ed.2d 57 (2008).

**17.** The arbitration clause in the CBA in *Wright* provided for arbitration of "[m]atters under dispute," which the Supreme Court stated could be understood to mean matters in dispute under the contract. *Wright, supra,* 525 U.S. at 80, 119 S.Ct. 391. Such a clause, it determined, was insufficient to meet the requirement of an explicit waiver when the right to a federal judicial forum was being given up. *Id.*

**18.** The Supreme Court was referring to " 'a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Wright, supra,* 525 U.S. at 78, 119 S.Ct.391 (quoting *AT & T Technologies, Inc. v. Commc'ns Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

**19.** In *Wright, supra,* the Supreme Court acknowledged the tension between the *Gilmer* and *Gardner–Denver* line of cases. *See Wright, supra,* 525 U.S. at 76–77, 119 S.Ct. 391. Although finding both lines of cases relevant to its disposition of the case, the Supreme Court declined the request of Wright and the United States as *amicus* to reconcile the two by holding "that federal forum rights cannot be waived in union-negotiated CBAs even if they can be waived in individually executed contracts—a distinction that assuredly finds sup-

ognized that there was a different "presumption of arbitrability under the FAA," for various reasons, it "decline[d] to consider the applicability of the FAA" to that case. *Id.* at 77 n. 1, 119 S.Ct. 391.

### B. *Analysis*

Appellee argues that the grievance/arbitration clauses in the CBA at issue in this case are sufficiently broad to cover appellants' claims. Whether a particular dispute is subject to union negotiated grievance and arbitration procedures in the CBA will depend upon the terms of the agreement. *See Benefits Commc'n Corp., supra,* 642 A.2d at 1303 (noting the preference for arbitration remedies where the parties have so agreed).

In this case, the CBA provides in section 1 of Article XIX:

> The Union and the Company recognize their mutual responsibility for the prompt and orderly disposition of grievances of Employees that arise under this Agreement. To this end, the Union, the Employees, and the Company agree that the provisions of this article shall provide the means of settlement of all grievances of employees.

Section 3 of the same article provides a grievance procedure for "[a]ny difference or dispute arising out of or under this Agreement" which the parties have not been able to resolve. Article XVIII addresses the matters of employee discipline, suspension and termination.[20]

As noted, Article XIX section 1 of the CBA provides for arbitration of matters that "arise under this Agreement." While the next sentence makes reference to all employee grievances, it refers back to the limitation expressed in the first sentence (*i.e.,* grievances arising under the CBA). The provisions describing the grievance procedure itself (Article XIX section 3) similarly reference "any difference or dispute arising out of or under this Agreement." Thus, the grievance and arbitration provisions in the CBA appear to cover only matters in dispute under the contract. In *Wright, supra,* the Supreme Court determined such a clause to be insufficient to constitute an employee's waiver of a federal forum for a claim arising under the Americans with Disabilities Act. 525 U.S. at 80, 119 S.Ct. 391.

This conclusion is reinforced by Article XIX, section 8, of the CBA, which limits the arbitrator's jurisdiction: "The jurisdiction and authority of the arbitrator of the grievance and his opinion and award shall be confined exclusively to the specific provisions or provision of this Agreement at issue between the Union and the Company. He shall have no authority to add to, alter, amend or modify any provision of the Agreement." We note, as well, that the Union controls access to arbitration. Article XIX, section 6 provides that "[n]o individual Employee shall have the right to invoke this arbitration procedure." It is clear that this particular CBA does not

---

port in the text of *Gilmer,* see 500 U.S. at 26, 35, 111 S.Ct. 1647." *Wright,* 525 U.S. at 77, 119 S.Ct. 391. The Court found it "unnecessary to resolve the question of the validity of a union-negotiated waiver, since it is apparent to us, on the facts and arguments presented here, that no such waiver has occurred." *Id.*

**20.** Article XVIII, provides in pertinent part:

Section 1. Standard—Disciplinary action shall not be imposed upon an employee except for just cause and shall be commensurate with the offense.

Section 2. Progressive Discipline—The Company will follow the principles of progressive discipline. Although some offenses warrant suspension or termination for a first offense, disciplinary action will usually include:

(a) One or more oral reprimands[ ] with appropriate notation in employee's file, which may not be the subject of a grievance;

(b) One or more written reprimands[ ];

(c) One or more suspension(s);

(d) Termination ...

require arbitration of claims that are independent of the terms of the agreement itself.

To the extent that appellants can show that they are asserting rights that do not arise under the CBA, but rather ones that are distinctly separate and independent of it, their CBA does not by its terms restrict their right to a judicial forum. *See, e.g., Finch, supra,* 586 A.2d at 1278; *Smith, supra* note 9, 991 P.2d at 1143; *Conaway, supra,* 431 N.W.2d at 800. In its brief alternative ruling dismissing on the grounds of failure to exhaust grievance and arbitration remedies, the trial court did not focus on whether the claims asserted arise under the CBA or are independent of it and the significance of that distinction to its disposition. With respect to appellants Byrd and Quarles, whose claims must be remanded for further consider-

ation under the preemption analysis, we cannot determine on the present record whether they are asserting claims that are, in fact, independent of the CBA. Therefore, upon remand, the trial court should make the necessary determination and consider, in light of the principles enunciated in this opinion, whether Byrd and Quarles must exhaust administrative remedies before proceeding.[21]

For the foregoing reasons, the order dismissing the claim of appellant Monroe (App. No. 05–CV–803) is affirmed, and the cases of appellants Byrd and Quarles (App. No. 05–CV–778) are remanded for further proceedings consistent with this opinion.

*So ordered.*

---

**21.** In light of our disposition of Monroe's claim on the preemption issue, we need not address whether she is precluded from pro-ceeding for failure to exhaust administrative remedies.