*Scott Miller-Phoenix v. Baltimore City Board of School Commissioners*, No. 209, September Term, 2019. Opinion by Fader, C.J.

**LABOR & EMPLOYMENT — WRONGFUL TERMINATION — NON-RENEWAL OF EMPLOYMENT CONTRACT**

The tort of wrongful termination may lie when an employer terminates an employee for reasons that contravene a clear mandate of public policy, by declining to renew an employment contract for which the parties anticipated a reasonable possibility of renewal.

**PRESERVATION FOR APPELLATE REVIEW — MEMORANDA & PLEADINGS — MARYLAND RULE 8-131**

Ordinarily, an appellate court will not consider arguments that were not raised before or passed upon by the trial court.

Circuit Court for Baltimore City
Case No. 24-C-17-006460

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 209

September Term, 2019

_____

SCOTT MILLER-PHOENIX

v.

BALTIMORE CITY BOARD
OF SCHOOL COMMISSIONERS

_____

Fader, C.J.,
Leahy,
Eyler, Deborah S.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: May 29, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Scott Miller-Phoenix, the appellant, sued the Baltimore City Board of School Commissioners (the "Board"), the appellee, after the Board decided not to renew his one-year provisional contract of employment as a schoolteacher. Among other claims, Mr. Miller-Phoenix argued that the Board wrongfully terminated his employment in retaliation for filing a workers' compensation claim.[1] The Circuit Court for Baltimore City concluded that a claim for wrongful termination cannot be premised on the non-renewal of a contract and, therefore, granted summary judgment in favor of the Board. We hold that a claim for wrongful termination may lie when an employer's motivation for deciding not to renew a renewable employment agreement contravenes a clear mandate of public policy. We will, therefore, vacate the judgment with respect to the wrongful termination claim and remand for further proceedings.

Mr. Miller-Phoenix also brought claims against the Board for: (1) firing him in retaliation for reporting illegal conduct in violation of whistleblower protection laws; and (2) breaching the parties' employment contract. We will affirm the circuit court's grant of summary judgment in favor of the Board on those claims.

---

[1] Throughout this opinion, we refer to the tort at issue as "wrongful termination," which is the term used predominantly by the Court of Appeals in its most recent opinion exploring the subject. *See Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 446 (2017). The Court also has referred to the tort as "wrongful discharge," *see, e.g.*, *id.*; *Gazunis v. Foster*, 400 Md. 541, 563 (2007), and "abusive discharge," *see, e.g.*, *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 605 (1989). Which term is used has no effect on our analysis.

## BACKGROUND

*Statutory and Regulatory Background*

Public schoolteachers in Maryland are contractual employees, and the standard terms of their contracts are established by State regulations. *See* COMAR 13A.07.02.01(A) (2019). The State Board of Education has prescribed two forms of standard teacher's contracts: Regular Contracts and Provisional Contracts. *See* COMAR 13A.07.02.01(B)-(C). Regular Contracts "continue from year to year," after an initial probationary period, and may be terminated only for cause. Md. Code Ann., Educ. § 6-202(a)(1) (Repl. 2018; Supp. 2019); COMAR 13A.07.02.01(B). Provisional Contracts, by contrast, "automatically terminate and expire on the thirtieth day of June next succeeding the date of [their] signing." COMAR 13A.07.02.01(C).

Separately, Maryland requires that teachers be certified to ensure that "[p]rofessional public educational staff possess the minimum essential knowledge and skills needed to achieve outcomes for public education." COMAR 13A.12.01.01(A). Thus, Maryland public schoolteachers' contracts require that "teachers . . . maintain active professional certification as a condition of employment," *McNamara v. Balt. City Bd. of Sch. Comm'rs*, MSBE Op. No. 19-15, at 3 (2019), *available at* http://marylandpublic schools.org/stateboard/Documents/legalopinions/2019/032019/McNamara.Op.19-15.pdf (last visited Apr. 28, 2020), and the Regular Contract "automatically terminate[s] if the employee ceases to hold a professional certificate," COMAR 13A.07.02.01(B). Several types of professional certificates exist, most of which are "valid for 5 years," COMAR 13A.12.01.06, and must be renewed periodically, *see* COMAR 13A.12.01.11(A)-(B).

2

Although the State Department of Education issues these certificates, local school systems "process[] [ ] requests for certificates for [their] employees, . . . and decid[e] whether [their] employees have met certification requirements." *McNamara*, MSBE Op. No. 19-5, at 1. A teacher whose professional certificate expires may be given a conditional certificate, which "is valid for 2 years" and may be renewed only once, for an additional two-year term. COMAR 13A.12.01.11(A)(3), (A)(4), & (C)(2).

When a tenured teacher's regular certification expires without renewal, "the regular teacher's contract terminates automatically," and the school system "ha[s] the discretionary authority to decide whether to hire [that teacher] under a new contract." *McNamara*, MSBE Op. No. 19-15, at 4-5. If the teacher obtains a conditional certificate, then she or he may be reemployed under a Provisional Contract. *Jones v. Balt. City Bd. of Sch. Comm'rs*, MSBE Op. No. 15-05, at 2 n.2 (2015) http://archives.marylandpublicschools.org/MSDE/stateboard/legalopinions/2010/docs/Jones.Opin.No.15-05.pdf (last visited Apr. 28, 2020) (citing COMAR 13A.07.02.01(C)).

### Background Facts

Mr. Miller-Phoenix was employed by the Board as a teacher from 1992 to 2017, except for one five-year hiatus. Throughout that period, he alleges, he "observed . . . various and sundry violations of policies, violations of laws, and abuse of authority." Mr. Miller-Phoenix asserts that he "timely reported these issues to his union, [the Board], news reporters, and [ ] elected officials," and that in response, the Board "attempted to silence [him] and others who complained of poor school conditions by taking unfair and illegal reprisals."

3

Mr. Miller-Phoenix began the 2016-2017 school year at Waverly Elementary/ Middle School. On September 14, 2016, he went on leave under the Family & Medical Leave Act, 29 U.S.C. §§ 2601-2654 (2019), due to post-traumatic stress disorder he claimed was caused by work experiences during his prior teaching assignments.

On October 14, 2016, Zakia McAllister, the Certification Manager for the Board, informed Mr. Miller-Phoenix in writing that his teaching certification from the State Department of Education had expired because he had failed to submit "timely and sufficient documentation required for renewal." As a result, the letter continued, Mr. Miller-Phoenix's "employment contract with City Schools terminated and, if applicable, [his] tenure expired." The letter stated that the Department had issued Mr. Miller-Phoenix a conditional certificate, gave him instructions for seeking reinstatement of his full teaching certification, and informed him that he needed to sign a Provisional Contract by October 28, 2016 to maintain his employment. Although Mr. Miller-Phoenix later asserted that he had, in fact, completed the certification requirements before the applicable deadline, he did not challenge the Board's decision at the time. Instead, on October 18, 2016, he signed a Provisional Contract with a stated term of July 1, 2016 to June 30, 2017.

The day after signing his Provisional Contract, Mr. Miller-Phoenix sent an email to his principal at Waverly in which he expressed an intent to submit a workers' compensation claim for post-traumatic stress disorder. Although the record does not contain a copy of the workers' compensation claim, Mr. Miller-Phoenix alleged in his complaint, and the Department conceded in its answer, that he filed such a claim on December 23, 2016.

4

In an email dated April 28, 2017, the Board informed Mr. Miller-Phoenix that his Provisional Contract would not be renewed and that, as a result, his "employment with City Schools will cease on June 30, 2017." Although the email states that "[i]t is our understanding that you and your principal have met to discuss this matter and the rationale that led to this decision," Mr. Miller-Phoenix alleges that he did not receive notice of the decision until months later, when his union representative forwarded the email to him.[2] The email further states that the Board "expects you to fulfill all of the terms of your contract through June 30, 2017, including continuing to report to your assigned teaching location each day and fulfilling all of your teaching obligations." Mr. Miller-Phoenix did not file a grievance regarding the non-renewal of his Provisional Contract.

*Procedural History*

On December 18, 2017, Mr. Miller-Phoenix filed suit in the Circuit Court for Baltimore City. In Counts I and II of his complaint, Mr. Miller-Phoenix alleged that the Board had discharged him in retaliation for his complaints about the Board's misconduct, in violation of the Maryland Public School Employee Whistleblower Protection Act, Md. Code Ann., Educ. §§ 6-901–6-906 (2017) (Count I, the "State Whistleblower Claim"), and Baltimore City's Whistleblower Rights and Responsibilities Ordinance, Balt. City Code art. I, §§ 8-1–8-13 (2019) (Count II, the "City Whistleblower Claim"). In Count III, he brought a claim for common law wrongful termination premised on his assertion that the

---

[2] The Board sent the email to Mr. Miller-Phoenix's work account, from which he claims he "was locked out . . . at least a couple months, if not three months, before [his] tenure ended."

5

Board had discharged him in retaliation for filing his workers' compensation claim. In Count IV, he alleged breach of contract.

After a period of discovery, the Board moved for summary judgment on all four counts. At the conclusion of a hearing on the motion, the circuit court granted summary judgment in favor of the Board with respect to (1) the City Whistleblower Claim, on the ground that Mr. Miller-Phoenix was not a Baltimore City employee,[3] and (2) the State Whistleblower Claim and breach of contract claim, on the ground that Mr. Miller-Phoenix had failed to exhaust his administrative and contractual remedies. The court reserved ruling on the wrongful termination claim and requested further briefing from the parties as to whether a contractual employee could state a claim for wrongful termination based on non-renewal of the contract at the end of its term.

After receiving the parties' supplemental briefs, the circuit court issued a written order granting summary judgment in favor of the Board on all counts. With respect to wrongful termination, the court held that the tort did not apply to the non-renewal of an employment contract. Thus, the court held, the Board "did not discharge [Mr. Miller-Phoenix]; rather, it had the right in the agreement to not renew his employment contract when it expired . . . and it chose not to renew." Mr. Miller-Phoenix timely appealed.

---

[3] Mr. Miller-Phoenix did not contest the motion for summary judgment on the City Whistleblower Claim and has not appealed that aspect of the circuit court's judgment, so we do not discuss it further.

6

"The question of whether a trial court's grant of summary judgment was proper is a question of law subject to de novo review on appeal." *Myers v. Kayhoe*, 391 Md. 188, 203 (2006) (citing *Livesay v. Balt.*, 384 Md. 1, 9 (2004)). "In reviewing a grant of summary judgment under Md. Rule 2-501, we independently review the record to determine . . . whether the moving party is entitled to judgment as a matter of law. We review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party." *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 67 (2006) (quoting *Myers*, 391 Md. at 203).

**I.    THE CIRCUIT COURT ERRED IN RULING THAT THE NON-RENEWAL OF A TERM CONTRACT CAN NEVER GIVE RISE TO A CLAIM FOR WRONGFUL TERMINATION.**

As the sole basis for granting summary judgment on Mr. Miller-Phoenix's wrongful termination claim, the circuit court held that "an abusive or wrongful discharge claim may only be brought when an employee is terminated or discharged during the period of a contractual agreement and prior to the expiration of that agreement." We disagree. Addressing an issue of first impression in Maryland, we hold that the tort of wrongful termination may lie when an employer decides to terminate an employment relationship by declining to renew an employment agreement for which the parties anticipated the reasonable possibility of renewal.

Under the common law, "an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." *Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 450 (2017) (quoting *Adler v. Am. Standard Corp.*, 291 Md.

7

31, 35 (1981)). As originally applied to employees at will, the tort of wrongful termination—also called wrongful discharge or abusive discharge, *see* footnote 1 above—created an exception to that rule. The tort permits an employee to bring a cause of action against an employer "when the motivation for the discharge contravenes some clear mandate of public policy." *Adler*, 291 Md. at 47.

In *Ewing v. Koppers Co.*, 312 Md. 45 (1988), the Court of Appeals both (1) extended the tort to "employees who serve under contract" and (2) held that "[d]ischarging an employee solely because that employee filed a worker's compensation claim contravenes [a] clear mandate of Maryland public policy." *Id.* at 49-50. The Court based the latter conclusion on the General Assembly's "strong statement to that effect in making such conduct a criminal offense," as well as the Court's "perception of the magnitude of the public interest in preserving the full benefits of the worker's compensation system to employees, and deterring employers from encroaching upon those rights." *Id.*

Much of the case law following *Adler* and *Ewing* has concerned what constitutes a "clear mandate of public policy" capable of supporting a claim for wrongful termination. *See, e.g.*, *Yuan*, 452 Md. at 455 (holding that federal regulations "regarding research misconduct do not provide a clear public policy to support a tort claim for wrongful termination of employment"); *Wholey v. Sears Roebuck*, 370 Md. 38, 43 (2002) (plurality opinion) ("[A] clear public policy mandate exists in the State of Maryland which protects employees from a termination based upon the reporting of suspected criminal activities to the appropriate law enforcement authorities."); *Molesworth v. Brandon*, 341 Md. 621, 628

8

(1996) (terminating an employee based on sex can give rise to a claim for wrongful termination if the employer has fewer than 15 employees, because no statute provides a remedy against such an employer); *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 613 (1989) (clarifying that the tort of wrongful termination is not available when a statute prohibits the conduct and "confers a remedy" for it). In light of *Ewing*, we need not confront that issue here. The Court of Appeals has already determined that terminating an employment relationship for filing a workers' compensation claim is "particularly reprehensible conduct." *Ewing*, 312 Md. at 49.

To date, however, our appellate courts have applied the tort of wrongful termination only to employees at will and contractual employees in the middle of their contractual terms. As the Board emphasizes, Mr. Miller-Phoenix was neither. The question is whether that distinction matters for purposes of the tort. We conclude that it does not. We draw support for that determination from the rationale expressed by the Court of Appeals when it first recognized the tort in *Adler* and when it later extended the tort to contractual employees in *Ewing*.

In *Adler*, the Court identified two different interests that would be served by permitting employees at will to sue for wrongful termination. One is the interest of the employee. Notwithstanding that an "employer has an important interest in being able to discharge an at will employee whenever it would be beneficial to his business," the Court deemed the employee's interest in job security "deserving of recognition" when that interest is "threatened not by genuine dissatisfaction with job performance," but based on an illegitimate consideration. 291 Md. at 42. The second interest served by recognition of

9

the tort is that of the public, because "society as a whole has an interest in ensuring that its laws and important public policies are not contravened." *Id.*

When the Court decided in *Ewing* to extend the tort to contractual employees, it noted that the first consideration mentioned in *Adler* was inapplicable. 312 Md. at 49. The Court observed, however, that the vulnerability of at will employees "was only one of the factors considered by the Court" in *Adler. Id.* The remainder of the Court's discussion in *Ewing* is particularly relevant here:

> As Chief Judge Murphy pointed out for the Court [in *Adler*], "society as a whole has an interest in ensuring that its laws and important public policies are not contravened." [*Adler*, 291 Md. at 42.] The tort action as we have recognized it is not intended to reach every wrongful discharge. It is applicable only where the discharge contravenes some clear mandate of public policy. Thus, the public policy component of the tort is significant, and recognition of the availability of this cause of action to all employees, at will and contractual, will foster the State's interest in deterring particularly reprehensible conduct. Moreover, it would be illogical to deny the contract employee access to the courts equal to that afforded the at will employee. We hold that a cause of action for abusive discharge exists in favor of employees who serve under contract as well as those who serve at will.

*Id.*

The societal interest discussed in *Ewing* pertains equally to a case of non-renewal of a term contract, as society's "interest in ensuring its laws and important public policies are not contravened," *Adler*, 291 Md. at 42, is equally strong regardless of *how* an employer terminates an employment relationship. And recognition of the tort's availability "to *all* employees . . . will foster the State's interest in deterring particularly reprehensible conduct." *Ewing*, 312 Md. at 49 (emphasis added). Simply put, society's interest in

10

deterring conduct that contravenes important public policies is no less important at the end of a contract's term than during it.

The individual interest that was present in *Adler*, but not in *Ewing*, also supports recognition of the tort in this circumstance, because employees who are at the end of the term of a renewable contract are similarly vulnerable to those employed at will. In both circumstances, the employee lacks any contractual rights or other protection against the termination of the employment relationship "for any reason, or no reason at all."[4]  *See*

---

[4] This common characterization of an at will employment relationship is, of course, no longer entirely accurate. Although a party to such a relationship may terminate the relationship for "no reason at all" without incurring legal liability, such a party may not terminate the relationship "for any reason." Indeed, numerous federal, state, and local laws prohibit employers from terminating an employment relationship due to, among other things, an employee's:

(1)     "[R]ace, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(1) (1991); *see also, e.g.*, Md. Code Ann., State Gov't § 20-606(a)(1)(i) (2019 Repl.); Montgomery County Code § 27-19(a) (2020);

(2)     "[A]ncestry," *e.g.*, Montgomery County Code § 27-19(a);

(3)     Disability, *see* 42 U.S.C. § 12112(a) (2008); State Gov't § 20-606(a)(1)(i); *see also, e.g.*, Montgomery County Code § 27-19(a);

(4)     Participation in a labor organization, *see* 29 U.S.C. § 158(a)(3) (1974);

(5)     Pregnancy, *see* 42 U.S.C. § 2000e(k) (1991); State Gov't § 20-609(b) (2013 Repl.); or "family responsibilities," *e.g.*, Montgomery County Code § 27-19(a);

(6)     Age, *see* 29 U.S.C. § 623(a)(1) (2015); State Gov't § 20-606(a)(1)(i);

(7)     Marital status, *see* State Gov't § 20-606(a)(1)(i); *see also, e.g.*, Montgomery County Code § 27-19(a);

(8)     Sexual orientation or gender identity, *see* State Gov't § 20-606(a)(1)(i); *see also, e.g.*, Montgomery County Code § 27-19(a);

11

*Wholey*, 370 Md. at 49. That, however, does not render any less odious an employer's decision to terminate the relationship for impermissible reasons such as the employee's sex, *see Molesworth*, 341 Md. at 632, refusal to engage in unlawful behavior, *see Adler*, 291 Md. at 38 (discussing *Tameny v. Atl. Richfield Co.*, 610 P.2d 1330 (Cal. 1980)), or filing of a workers' compensation claim, *see Ewing*, 312 Md. at 50. Thus, "it would be illogical" to deprive an employee whose term contract is up for renewal of "access to the courts equal to that afforded the at will employee." *Id.*

The Board argues that terminations effected through the non-renewal of a term employment contract should not be subject to challenge in tort because, in those circumstances, it is the predetermined termination date of the contract, and not any action by the employer, that causes the employment relationship to end. We think that argument fails to appreciate that many term employment contracts are entered with the reasonable possibility, if not the mutual expectation, that they will be renewed if the employee's job performance is adequate. When that is the case, it is the employer's decision not to renew the agreement that causes the employment relationship to end.

---

(9)  Genetic information or "refusal to submit to a genetic test or make available the results of a genetic test," *see* State Gov't § 20-606(a)(1)(i), (ii); *see also, e.g.*, Montgomery County Code § 27-19(a); and

(10)  Opposition to a discriminatory practice prohibited by statute or participation in an investigation, proceeding, or hearing regarding such a practice, *see* State Gov't § 20-606(f); *see also, e.g.*, 29 U.S.C. § 158(a)(4); *id.* § 623(d); 42 U.S.C. § 2000e-3(a) (1972); 42 U.S.C. § 12203(a)-(b) (1990); Montgomery County Code § 27-19(c).

12

Although terminating an at will employee requires an affirmative act and non-renewal can be passive, we do not think that distinction dispositive where the employer makes a conscious decision not to renew the contract. The "wrongful" element of the tort of wrongful termination lies not in the fact of termination but in the motivation for it. In other words, "it is irrelevant whether the right to discharge exists . . . . The issue is whether the employer abused that right." *Finch v. Holladay-Tyler Printing*, 322 Md. 197, 206 (1991). Whether a termination is accomplished passively (by choosing to forgo renewal of a renewable contract) or actively (by firing an employee), if an employer's motivation for ending the employment relationship "contravenes some clear mandate of public policy," *Adler*, 291 Md. at 35, we can think of no reason why the law should tolerate it.[5]

Of course, not all term employment contracts come with an expectation that renewal is reasonably probable. For example, some term contracts may be seasonal, tied to a project of limited duration, designed to serve only as short-term employment or training on a non-continuing basis, or otherwise entered into with an agreement or expectation that they will not be renewed. Therefore, to satisfy the element of causation, a plaintiff pursuing a claim

---

[5] The Board's process for deciding not to renew Mr. Miller-Phoenix's contract demonstrates how "non-renewal" is not necessarily passive conduct. Jerome Jones, Director of Labor Relations and Negotiations for the Board, testified at his deposition that when a "principal makes a recommendation" not to renew a Provisional Contract, he or she "forwards it to the [Instructional Leadership Executive Director, or] ILED," an official who supervises a group of schools. "If the ILED approves" the decision not to renew, Mr. Jones continued, "he forwards it to me. I look at everything involved, and then I forward my recommendation to the Chief Human Capital Officer who will sign off on it." In other words, the Board's decision not to renew a Provisional Contract occurs only after recommendation and approval by four school officials.

for wrongful termination by non-renewal must plead and prove that the contract was subject to a reasonable possibility of renewal.

Here, the Board concedes that it made an affirmative choice not to renew Mr. Miller-Phoenix's contract, and that its choice resulted in the termination of his employment. In the Board's memorandum in support of its motion for summary judgment, it asserted that Mr. Miller-Phoenix "was not terminated by [the Board] but instead had a contract that he remained employed under until its expiration. Upon said expiration date, [the Board] had the option to not renew the contract, and *chose that option*, thereby ceasing [Mr. Miller-Phoenix's] employment with [the Board]." (Emphasis added). Similarly, before this Court, the Board argues that it chose to allow the employment agreement to "expire[] without a renewal," even though, as it acknowledged at oral argument, it was "very likely that [renewal] could happen." The circuit court, as well, recognized both the possibility of renewing the contract and the Board's affirmative decision not to do so, stating that the Board "had the right in the [Provisional Contract] to not renew [Mr. Miller-Phoenix's] employment contract when it expired . . . and it chose not to renew." Thus, the Board's exercise of discretion not to renew the parties' employment relationship at the end of the contractual term is, for these purposes, equivalent to an employer's exercise of discretion to terminate an at will employment relationship.

The Board relies on a handful of out-of-state cases to support its position. The first is a federal district court decision applying Ohio law, in which the court concluded that "[i]t would contradict the plain meaning of the language to equate 'wrongful discharge' with 'nonrenewal.'" *Cameron v. Bd. of Educ.*, 795 F. Supp. 228, 239 (S.D. Ohio 1991).

14

For reasons already discussed, we believe that reasoning accords significance to the term "discharge" that is not supported by the public policy rationale that underlies the tort. The other reported cases on which the Board relies, all from California, are similarly unconvincing. *See Motevalli v. L.A. Unified Sch. Dist.*, 18 Cal. Rptr. 3d 562 (Ct. App. 2004); *Daly v. Exxon Corp.*, 63 Cal. Rptr. 2d 727 (Ct. App. 1997)); *see also Touchstone Television Prods. v. Superior Court*, 145 Cal. Rptr. 3d 766 (Ct. App. 2012). California's courts apply a general rule that "an employee may not sue for tort damages where the employment contract is for a fixed term and expires." *Daly*, 63 Cal. Rptr. 2d at 730. Notably, in at least two of those cases, the plaintiff had an available statutory remedy to pursue, *see Touchstone Television Prods.*, 145 Cal. Rptr. 3d at 767 (citing Cal. Labor Code § 6310(b)); *Daly*, 63 Cal. Rptr. 2d at 730 (same), which means that the tort also would have been unavailable for those terminations in Maryland, *see Makovi*, 316 Md. at 613. In any event, we find the reasoning of those cases unpersuasive and inconsistent with the purpose of the tort in this State.

In related contexts, courts have treated the non-renewal of a term contract as similar to a termination, most notably in connection with applying federal and state antidiscrimination statutes.[6] *See, e.g.*, *Wilkerson v. New Media Tech. Charter Sch. Inc.*,

---

[6] Courts in other common law countries, too, have held for purposes of their fair employment statutes that "[w]here a fixed-term contract expires and is not renewed, that is a dismissal in law." *E.g.*, *Royal Surrey County NHS Found. Tr. v. Drzymala*, [2018] UKEAT 0063/17/BA, [4] (U.K.), *available at* https://assets.publishing.service .gov.uk/media/5a5789c340f0b648ca1e71cb/Royal_Surrey_County_NHS_Foundation_Tr ust_v_Ms_M_Drzymala_UKEAT_0063_17_BA.pdf (last visited Apr. 28, 2020); *see also, e.g.*, *Khayam v. Navitas English Proprietary Ltd.* [2017] FWCFB 5162 (Austl.), *available*

15

522 F.3d 315, 320 (3d Cir. 2008) (holding that an employer violates Title VII of the Civil Rights Act of 1964 if he or she "fail[s] to renew an employment arrangement . . . for a reason prohibited by Title VII"); *accord Smith v. Univ. of N.C.*, 632 F.2d 316, 341 (4th Cir. 1980) (college professor who alleged that her employment contract was not renewed because of her age, sex, and religion "established a prima facie case of discrimination" under Age Discrimination in Employment Act and Title VII); *see also Saridakis v. S. Broward Hosp. Dist.*, 681 F. Supp. 2d 1338, 1348 (S.D. Fla. 2009) ("[T]he majority of courts in recent years have deemed non-renewal the equivalent of termination . . . for purposes of a Title VII discrimination analysis."); *Nini v. Mercer County Cmty. Coll.*, 968 A.2d 739, 744-45 (N.J. App. Div. 2009) (holding, for purposes of New Jersey antidiscrimination statute, that "no functional difference exists between the failure to reappoint at the end of a fixed term and the dismissal of an at-will employee") (quoting *Battaglia v. Union County Welfare Bd.*, 438 A.2d 530, 538 (N.J. 1981)), *aff'd*, 995 A.2d 1094 (N.J. 2010); *Johnson v. Trs. of Durham Tech. Cmty. Coll.*, 535 S.E.2d 357, 362 (N.C. Ct. App. 2000) ("As the failure to renew an employee's contract produces the adverse result of terminating her employment, . . . the failure to renew an employment contract constitutes an adverse employment action for purposes of [the North Carolina Retaliatory Employment

---

*at* https://www.fwc.gov.au/documents/decisionssigned/ html/pdf/2017fwcfb5162.pdf (last visited Apr. 28, 2020) (teacher whose fixed-term employment contract was not renewed had been "dismissed" and could bring a statutory claim for unfair dismissal).

Discrimination Act].").[7]  In addition, the United States Supreme Court "has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights."  *Perry v. Sindermann*, 408 U.S. 593, 598 (1972).

Finally, we observe that, as a practical matter, the position urged by the Board "would effectively create a two-tiered system in which fixed-term contract employees are afforded fewer rights than those serving at-will."  *See Nini*, 995 A.2d at 1103.  That is, employers who engage employees under renewable term contracts would be free to terminate those relationships for reasons antithetical to public policy, while employers who engage employees on an at will basis would not.  We decline to adopt that result.[8]  *Cf. Beye*

---

[7] The Maryland State Board of Education, which hears administrative challenges to terminations, also has treated non-renewals as the equivalent of discharges for purposes of retaliation claims.  Indeed, even though the State Board has stated that "a local board may choose not to renew a probationary teaching contract for any reason, or no reason at all," it has held that the "decision to non-renew cannot be based on illegal or discriminatory reasons."  *Hudson v. Prince George's County Bd. of Educ.*, MSBE Op. No. 17-26, at 3-4 (2017), *available at* http://marylandpublicschools.org/stateboard/Documents/ legalopinions/072017/Hudson.Opin.No.17-26.pdf (last visited Apr. 28, 2020); *see also, e.g.*, *Torres v. Balt. City Bd. of Sch. Comm'rs*, MSBE Op. No. 18-04, at 3 (2018), *available at* http://marylandpublicschools.org/stateboard/Documents/legalopinions/012018/ Torres.Opin.No.18-04.pdf (last visited Apr. 28, 2020) ("School systems have a large degree of flexibility in deciding not to renew a probationary teacher's contract so long as the reason for the nonrenewal is not illegal or discriminatory."); *Jones v. Balt. City Bd. of Sch. Comm'rs*, MSBE Op. No. 15-05, at 8 (2015), *available at* http://archives.marylandpublicschools.org/MSDE/stateboard/legalopinions/2010/docs/Jon es.Opin.No.15-33.pdf (last visited Apr. 28, 2020) (stating that although "a local board need not establish cause when it non-renews the contract of a teacher in probationary status, the decision not to renew cannot be based on illegal or discriminatory reasons").

[8] We pause to consider a point that neither party raised or briefed, but which we are not free to disregard.  In its opinion in *Yuan v. Johns Hopkins University*, 452 Md. 436

17

*v. Bur. of Nat'l Affairs*, 59 Md. App. 642, 653 (1984) (in recognizing the doctrine of constructive discharge in the context of wrongful terminations, stating that "it would defy both reason and fairness to immunize [an employer] from liability simply because [the employer] has been clever enough to effect the abusive separation by forcing a resignation").

---

(2017), the Court of Appeals included the following two sentences: "Moreover, wrongful discharge requires termination by the employer. Here, [the employee's] employment contract simply expired; he was not wrongfully terminated in violation of a clear and specific public policy." 452 Md. at 458. Although those sentences might appear to support the Board's position here, we do not think they were intended to resolve the matter before us, for at least three reasons.

First, the issue was not raised or briefed by the parties, nor was it identified by the Court as a question presented in the case. Although the employee in *Yuan* was terminated by the non-renewal of his contract, neither party appears to have identified that as a consideration relevant to whether he had stated a valid claim. Indeed, the issue does not appear in the briefs of either party, nor was it mentioned at oral argument.

Second, the sentences in question come at the end of a lengthy paragraph that identifies the university's procedures for addressing research misconduct and explains how the employee failed to comply with those procedures. The next paragraph addresses how "Congress has explicitly vested broad authority in the scientific institutions to determine how to address retaliation and whistleblowers." *Id.* at 458. The placement of the sentences between these two discussions of other issues, as well as the absence of any citations or further analysis of the issue, suggests that the Court did not intend to make a broad determination regarding the scope of the tort.

Third, if the Court had actually determined that the tort of wrongful termination does not apply to the non-renewal of a contract, that conclusion would have been dispositive of the employee's claim. But the Court did not treat its statement that way. Instead, the issue presented in *Yuan* was whether federal regulations concerning research misconduct "provide[d] a clear public policy to support a tort claim for wrongful termination of employment." *Id.* at 462. Based on its thorough and comprehensive review of applicable law, the Court held that they did not and, for that reason, affirmed the judgment against the employee. *Id.* The sentences at issue were thus *dicta*. *See State v. Baby*, 404 Md. 220, 246 (2008) (identifying as *obiter dictum* a statement that "was not made on a point that was argued by counsel and deliberately addressed by this Court" and on which the prior decision "was not dependent").

18

In sum, provided that the other elements of the tort are met, we hold that an employee may bring a claim for wrongful termination when, despite the parties having anticipated the reasonable possibility of renewing the employment relationship, the employer decides not to renew the contract for a reason that contravenes a clear mandate of public policy. Because the circuit court granted summary judgment to the Board based solely on its conclusion that a wrongful termination claim could not be based on the non-renewal of a contract, we will vacate that portion of the judgment and remand to that court for further proceedings.[9]

## II. MR. MILLER-PHOENIX'S WHISTLEBLOWER AND BREACH OF CONTRACT CLAIMS ARE BARRED BY HIS FAILURE TO EXHAUST HIS ADMINISTRATIVE AND CONTRACTUAL REMEDIES.

The circuit court held that Mr. Miller-Phoenix's State Whistleblower Claim was barred because he "did not exhaust administrative remedies," *see* Educ. § 6-904(a) ("A public school employee shall exhaust any administrative remedies before instituting a civil action under this section."), and that his breach of contract claim was barred because he "fail[ed] to pursue a grievance" as required by the teachers union's collective bargaining agreement, *see Amalgamated Transit Union v. Lovelace*, 441 Md. 560, 561 (2015) ("[A]

---

[9] The Board urges us to affirm on the alternative ground that Mr. Miller-Phoenix failed to present any evidence that his filing of a workers' compensation claim motivated the Board's decision not to renew his contract. Indeed, the Board argues, there is no evidence that the decisionmakers at the Board were even aware of the workers' compensation claim. The Board did not seek summary judgment on that basis, however, and the circuit court did not consider or rule on it. It may be that Mr. Miller-Phoenix cannot generate a genuine dispute of material fact regarding whether his filing of a workers' compensation claim motivated the Board's decision not to renew his contract. But that contention must be presented to the circuit court in the first instance. *See* Md. Rule 8-131(a).

union member must exhaust the union's internal remedies before filing suit in court."); *Dearden v. Liberty Med. Ctr.*, 75 Md. App. 528, 532 (1988) ("[I]ndividual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." (quoting *Republic Steel v. Maddox*, 379 U.S. 650, 652 (1965)) (emphasis removed)). On appeal, Mr. Miller-Phoenix argues that "he should be excused from exhaustion" because the Board "clearly repudiated the administrative process" and "rendered the administrative process inadequate" by not providing notice of his contract's non-renewal until after the deadline to file a grievance had passed.

The Board responds that Mr. Miller-Phoenix failed to preserve this issue. We agree. Before the circuit court, Mr. Miller-Phoenix did not argue that he was exempt from applicable exhaustion requirements or that the Board had "repudiated" the administrative process. Instead, with respect to his State Whistleblower claim, he contended that he "properly exhausted his administrative remedies" because "he raised his complaints directly with his principals" and "[the Board] Officials." He also asserted that the Board "did not have an administrative remedy for him to exhaust" because "there was no [w]histleblower policy in effect" at the time he filed his lawsuit. And with respect to his breach of contract claim, Mr. Miller-Phoenix did not indicate either that he had exhausted his contractual remedies or that he was exempt from doing so. At the hearing, his counsel argued that he "d[id]n't think that there [was] any law . . . that would have required [Mr. Miller-Phoenix] to file a grievance on [the breach of contract] claim," but he did not elaborate.

20

The circuit court concluded that Mr. Miller-Phoenix's State Whistleblower Claims and breach of contract claim both required Mr. Miller-Phoenix to exhaust his remedies, and that he did not do so. Before us, Mr. Miller-Phoenix does not challenge either of those conclusions. Instead, he argues for the first time that he should have been excused from complying with applicable exhaustion requirements because of the Board's conduct.

Rule 8-131(a) provides that, apart from jurisdictional challenges, "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court." The Court's "prerogative to review an unpreserved claim of error . . . is to be rarely exercised and only when doing so furthers, rather than undermines, the purposes of the rule," *Ray v. State*, 435 Md. 1, 22 (2013) (quoting *Robinson v. State*, 410 Md. 91, 103-04 (2009)), which are "to ensure fairness for the parties involved and to promote orderly judicial administration," *McDonell v. Harford County Hous. Agency*, 462 Md. 586, 602 (2019) (quoting *Jones v. State*, 379 Md. 704, 714 (2004)). Here, the arguments Mr. Miller-Phoenix now presses were not preserved for appellate review because they "w[ere] not raised below either in the pleadings or in the evidence and w[ere] not directly passed upon by the trial court." *See Heineman v. Bright*, 140 Md. App. 658, 671 (2001) (quoting *Devereux v. Berger*, 264 Md. 20, 31 (1971)). As a result, we will not reach them. We will therefore affirm the circuit court's entry of summary judgment in favor of the Board regarding Mr. Miller-Phoenix's State Whistleblower Claim and breach of contract claim.

## CONCLUSION

We hold that an employee may bring a claim for wrongful termination when, despite the parties having anticipated the reasonable possibility of renewing the employment relationship, the employer decides not to renew the contract for a reason that contravenes a clear mandate of public policy. We also hold that Mr. Miller-Phoenix failed to preserve his argument that he was not required to exhaust administrative and contractual remedies.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE SPLIT EVENLY BY THE APPELLANT AND THE APPELLEE.**

22